FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN

NATIONAL FINANCIAL PARTNERS    )
CORP.,                          )
                                )
            Plaintiff,          )
                                )        Civil No. 2008-37
        v.                      )
                                )
DENNIS A. CUNNING and RHONDA    )
J. WRENN a/k/a RHONDA J. WRENN  )
CUNNING,                        )
                                )
            Defendants.         )
_____ )

ATTORNEYS:

Tom Bolt, Esq.
A. Jennings Stone, Esq.
Nycole A. Thompson, Esq.
St. Thomas, U.S.V.I.
        *For the plaintiff.*

Susan Bruch Moorehead, Esq.
Kyle R. Waldner, Esq.
William L. Blum, Esq.
St. Thomas, U.S.V.I.
        *For the defendants.*

**MEMORANDUM OPINION**

GÓMEZ, C.J.

    The plaintiff, National Financial Partners Corp. ("NFPC"),
has moved for summary judgment against the defendants, Dennis A.
Cunning ("Cunning") and Rhonda J. Wrenn a/k/a Rhonda J. Wrenn
Cunning ("Wrenn") (together, the "Defendants").  In their
opposition to the motion, the Defendants argue that the parties'
dispute must be submitted to arbitration.  For the reasons that
follow, the Court will order this matter to arbitration.

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

NFPC is a corporation formed under Delaware law with its principal place of business in New York.

Cunning and Wrenn (together, the "Defendants") own real property described as Parcel No. 1C Estate Thomas, No. 6C New Quarter, St. Thomas, U.S. Virgin Islands, consisting of 0.45 U.S. acres, more or less, as shown on PWD Map No. D9-2537-T83 (the "Property").

On or about December 30, 2005, Cunning executed a Secured Personal Recourse Promissory Note (the "Note") in favor of NFPC in the amount of $1,761,686.[1] The Note requires repayment of principal and interest at the rate of six percent over an eight-month term, beginning on January 1, 2006.

To secure repayment of the Note, both Cunning and Wrenn executed a Pledge Agreement. The Pledge Agreement purports to grant NFPC a security interest in the Property as well as other collateral not a subject of this lawsuit.

In a letter dated August 1, 2007, NFPC made demand on Cunning for repayment of the Note.

NFPC commenced this action against the Defendants in March 2008. In Count One, NFPC asserts that Cunning has breached the terms of the Note. In Count Two, NFPC alleges that Cunning has

---

[1] Wrenn is not a signatory to the Note.

breached the terms of the Note and the Pledge Agreement. Count

Three alleges that the Defendants are in default under the Note

and the Pledge Agreement and seeks to foreclose NFPC's alleged

security interest in the Property.

NFPC has moved for summary judgment against the Defendants,

who oppose the motion. In their opposition to the motion, the

Defendants maintain, among other things, that this matter must be

submitted to arbitration pursuant to the Pledge Agreement. The

Court ordered, and timely received, supplemental briefing on the

issue of arbitrability.

## II. <u>DISCUSSION</u>

**A.    Summary Judgment Standard**

Summary judgment is appropriate if "the pleadings, the

discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789

F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no

genuine issue of material fact, but once this burden is met it

shifts to the non-moving party to establish specific facts

showing there is a genuine issue for trial. *Gans v. Mundy*, 762

F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest

upon mere allegations, general denials, or . . . vague statements

. . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

## B.     Standard for Compelling Arbitration

The Federal Arbitration Act (the "FAA") provides that "a written provision in . . . a contract to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable save upon any grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "establishes a presumption in favor of arbitrability when arbitrability is in doubt . . . ." *Ballay v. Legg Mason Wood Walker, Inc.*, 878 F.2d 729, 733 (3d Cir. 1989); *see also Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987); *Johnson v. West Suburban Bank*, 225 F.3d 366 (3d Cir. 2000) ("[T]he presumption in favor of arbitration

established by the [FAA] is a powerful one."); *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998) (citations omitted). "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986).

Because arbitration is a question of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* at 648. Therefore, whether or not parties must submit their dispute to arbitration is a question of contract between the parties. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995). A court cannot require a party to arbitrate unless that party has agreed to do so. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).

When deciding a motion to compel arbitration, the court employs a standard similar to the summary judgment standard. *See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Id.* at 54. The party opposing the

motion receives "the benefit of all reasonable doubts and

inferences that may arise." *Id.* The non-moving party, however,

must establish more than the "mere existence of a scintilla of

evidence" in support of its position. *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 252 (1986). "If the evidence is merely

colorable, or is not significantly probative, summary judgment

may be granted." *Id.* at 249-50 (internal citations omitted). If

a genuine issue of fact is present, the court must hold a trial

to determine whether an arbitration agreement exists. 9 U.S.C. §

4.

### III. <u>ANALYSIS</u>

Because, for the reasons discussed below, the Court

concludes that this matter must be submitted to arbitration, the

Court need not reach the merits of NFPC's motion for summary

judgment. According to the Defendants, their dispute with NFPC

is governed by an arbitration clause contained in the Pledge

Agreement.

Under the FAA[2], "[a] motion to compel arbitration calls for

---

[2] The FAA undisputedly applies in this matter. The FAA
applies to all contracts "evidencing a transaction involving
commerce." 9 U.S.C. § 2. The FAA defines "commerce" to include
commerce "*in any Territory of the United States* . . . ." 9 U.S.C.
§ 1 (emphasis supplied); *see also Isidor Paiewonsky Assocs., Inc.
v. Sharp Properties, Inc.*, 998 F.2d 145, 154 n.10 (3d Cir. 1993)
(citing *Kanazawa Ltd. v. Sound, Unlimited*, 440 F.2d 1239 (9th
Cir. 1971) (noting that the FAA applies to commerce in Guam));
*Sewer v. Paragon Homes, Inc.*, 351 F. Supp. 596, 599 (D.V.I.
1972).

a two-step inquiry into (1) whether a valid agreement to

arbitrate exists and (2) whether the particular dispute falls

within the scope of that agreement." *Trippe Mfg. Co. v. Niles*

*Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) (citation omitted).

"The FAA instructs courts to refer to principles of applicable

state law when determining the existence and scope of an

agreement to arbitrate." *Id.* at 532 (citing *Volt Info. Sciences,*

*Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S.

468, 475 (1989)).

Under Virgin Islands law, the essential prerequisites for

the creation of a valid contract are "a bargain in which there is

a manifestation of mutual assent to the exchange and a

consideration." *University of the Virgin Islands v.*

*Petersen-Springer*, 232 F. Supp. 2d 462, 469 (D.V.I. 2002); *see*

*also* Restatement (Second) of Contracts § 17 (1981).[3]

"Consideration" requires a performance or a return promise that

has been bargained for. Restatement (Second) of Contracts § 17

(1981). Where there is no mutual assent, or no meeting of the

minds, there is no contract. *James v. Fitzpatrick*, 25 V.I. 124,

127 (V.I. Terr. Ct. 1990).

The Pledge Agreement to which the Defendants refer is

---

[3] *See* V.I. CODE ANN. tit. 1, § 4 ("[T]he restatements of the
law . . . shall be the rules of decision in the courts of the
Virgin Islands[.]").

attached to NFPC's summary judgment papers.[4]  That document

provides, in pertinent part, as follows:

> In order to secure payment of the promissory note dated
> December 30, 2005 . . . payable to [NFPC], . . . in the
> amount of . . . $1,761,686 . . . which Note Dennis
> Cunning delivered in connection with a loan extended to
> him by [NFPC], Dennis Cunning and Rhonda Wrenn . . .
> hereby grant [NFPC] a security interest in, and assign,
> transfer and pledge to [NFPC], the following securities
> and other property:
>
> . . . .
>
> (c) The entirety of the [Defendants'] rights, title and
> interest in Parcel No. 1C Estate Thomas, No. 6C New
> Quarter, St. Thomas, Virgin Islands, as shown on PWD
> No. D9-2537-T83[.]

(Pl.'s Am. Mem. Supp. Mot. Summ. J., Exh. C at 1.)

The Pledge Agreement clearly and unambiguously grants NFPC a

security interest in the Property owned by the Defendants to

secure repayment of a loan.  Furthermore, it is supported by

consideration and signed by both Cunning and Wrenn, thus

manifesting the parties' mutual assent to its terms. *See Adams v.*

*Am. Residential Servs., L.L.C.*, Civ. No. 02-0410, 2003 U.S. Dist.

LEXIS 26478, at *14 (D.D.C. May 8, 2003) (applying District of

Columbia law) ("[A] signature indicates mutuality of assent and a

party is bound by the contract unless he or she can show special

circumstances relieving him or her of such an obligation."

---

[4]  The Defendants also rely on the copy of the Pledge
Agreement submitted by NFPC. (*See*, *e.g.*, Defs.' Mem. Supp. Opp'n
Pl.'s Mot. Summ. J. 3 n.1.)

(citations omitted)); *Blair v. Scott Specialty Gases*, 283 F.3d
595, 603 (3d Cir. 2002) ("When both parties have agreed to be
bound by arbitration, adequate consideration exists and the
arbitration agreement should be enforced." (citation omitted)).
Indeed, the parties do not dispute that they agreed to the terms
set forth in the Pledge Agreement. (*See* Pl.'s Mem. Supp. Mot.
Summ. J. 2) ("The Cunnings . . ., in order to secure payment of
the Note, . . . executed and delivered to [NFPC] a Pledge
Agreement granting [NFPC] a security interest in, and assigning,
transferring and pledging to [NFPC] the entirety of their rights,
title and interest in the Property." (citations omitted));
(Defs.' Statement Undisputed Material Facts 1) ("Defendants admit
to signing the Pledge Agreement[.]").  The Pledge Agreement,
including its arbitration clause, constitutes a valid, binding
contract. *See*, *e.g.*, *Salvadori v. Option One Mortg. Corp.*, 420 F.
Supp. 2d 349, 356 (D.N.J. 2006) (finding the first part of the
motion-to-compel inquiry satisfied where "the parties executed a
signed and valid Agreement to Arbitrate").

The Court asks next whether the parties' dispute falls
within the scope of the Pledge Agreement's arbitration clause.
That clause provides, in pertinent part:

> 12. **Arbitration.**  Any controversy between the parties
> hereto involving the construction or application of any
> terms, covenants or conditions of this Agreement or the
> Note, *or any claims arising out of or relating to this
> Agreement or the Note*, *or the breach hereof or thereof*,

> will be submitted to and settled by final and binding
> arbitration in New York, New York, before a mutually
> agreeable single arbitrator and pursuant to the rules
> of the American Arbitration Association then in effect,
> and judgment upon the award rendered by the arbitrator
> may be entered in any court having jurisdiction
> thereof.  In the event of any arbitration under this
> Agreement or the Note, the prevailing party shall be
> entitled to recover from the losing party reasonable
> expenses, attorneys' fees and costs incurred therein or
> in the enforcement or collection of any judgment or
> award rendered therein.  The "prevailing party" means
> the party determined by the arbitrator to have most
> nearly prevailed, even if such party did not prevail in
> all matters, not necessarily the one in whose favor a
> judgment is rendered.

(Pl.'s Am. Mem. Supp. Mot. Summ. J., Exh. C at 7) (emphasis

supplied).

The arbitration clause is certainly broad enough to

encompass NFPC's claims against the Defendants, as those claims

arise out of the Note and the Pledge Agreement. *See*, *e.g.*, *Trippe*

*Mfg. Co.*, 401 F.3d at 533 (finding the language of an arbitration

clause "very broad, encompassing '*all disputes*, claims, and

controversies *arising under* this Agreement, or a breach thereof .

. . .'" (emphasis supplied)); *Alejandro v. L.S. Holding, Inc.*,

310 F. Supp. 2d 745, 750 (D.V.I. 2004) (compelling arbitration

where the agreement "mandates arbitration for *any and all*

*disputes arising from* [the plaintiff's] employment" (emphasis

supplied)), *aff'd*, 130 Fed. Appx. 544 (3d Cir. 2005)

(unpublished).

Accordingly, the Court finds that there are no genuine

questions of material fact concerning either the Pledge

Agreement's validity or coverage of the dispute between NFPC and

the Defendants.

NFPC advances two main reasons why this matter should not be

submitted to arbitration.  First, NFPC asserts that the

Defendants agreed that NFPC could, in the event of default by the

Defendants, pursue its remedies in a judicial proceeding.  NFPC

relies on a mortgage (the "Mortgage") that the Defendants

executed in favor of NFPC.  The Mortgage is attached to NFPC's

brief on arbitration and is signed by both Cunning and Wrenn.  It

provides, in part:

> The mortgagor is Dennis A. Cunning and Rhonda A. Wrenn
> ("Borrower").  This Security Instrument is given to
> [NFPC] ("Lender").  Borrower owes Lender . . .
> $1,761.686.00. . . . Borrower does hereby mortgage,
> grant and convey to Lender the following described
> property located in St. Thomas, Territory of the Virgin
> Islands:
>
> Parcel No. 1C Estate Thomas, No. 6C New Quarter, St.
> Thomas, Virgin Islands, as shown on PWD No. D9-2537-
> T83.

(Pl.'s Supp. Br. Arbitrability, Exh. 1 at 1.)

In an excerpt to which NFPC ascribes particular weight, the

Mortgage also explains what remedies are available to NFPC in the

event of the Defendants' default:

> If the default is not cured on or before the date
> specified in the notice, Lender at its option may
> require immediate payment in full of all sums secured
> by this Security Instrument without further demand and
> may foreclose this Security Instrument in a judicial

proceeding.

(*Id.*, Exh. 1 at 8.)

According to NFPC, the language quoted above establishes that the Defendants "agreed that [NFPC] could require immediate payment in full of all sums secured by the mortgage and foreclose the mortgage by judicial proceeding if they failed to cure their default." (*Id.* at 2.)  In other words, in NFPC's view, the Mortgage mandates a judicial resolution.

NFPC's reliance on the Mortgage to argue that this matter cannot be submitted to arbitration is misplaced for at least two reasons.  First, the Mortgage does not convey the meaning that NFPC urges.  The clear and unambiguous language of the Mortgage nowhere categorically prohibits alternative dispute resolution. Rather, the Mortgage merely authorizes NFPC to petition a court in the event of the Defendants' default.  In essence, NFPC reads a prohibition into what is clearly permissive language. Importantly, there is no legal support for such a reading.

Second, even assuming NFPC were correct in its assertion that disputes arising out of the Mortgage are, as a general matter, to be resolved in court, NFPC fails to reconcile the Mortgage with the Pledge Agreement.  The Pledge Agreement stipulates that "any claims arising out of or relating to this Agreement or the Note, or the breach hereof or thereof, will be submitted to and settled by final and binding arbitration[.]"  No

language casts a wider net than "arising out of" and "relating
to." *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S.
395, 397-98 (1967) (stating that "the parties agreed to *a broad
arbitration clause*" saying that "[a]ny controversy or claim
*arising out of or relating to* this Agreement, or the breach
thereof, shall be settled by arbitration" (emphasis supplied)
(internal quotation marks omitted))); *see also Altria Group, Inc.
v. Good*, 129 S. Ct. 538, 548 (2008) (noting the broad scope of
"relating to" and explaining that "relating to is synonymous with
having a connection with" (quotation marks and citation
omitted)); *Morales v. Trans World Airlines*, 504 U.S. 374, 383
(1992) (explaining that "relating to" means "'to stand in some
relation; to have bearing or concern; to pertain; refer; to bring
into association with or connection with'" (quoting Black's Law
Dictionary 1158 (5th ed. 1979)).

Both the Pledge Agreement and the Mortgage invest NFPC with
a security interest in the same Property owned by the Defendants.
The complaint in this matter essentially alleges that Cunning
owes NFPC money under the Note; that both Cunning and Wrenn have
defaulted under the terms of an instrument that gives NFPC a
security interest in that Property; and that NFPC is entitled to
foreclose on its interest by virtue of that agreement. As
discussed above, that dispute is clearly subject to the Pledge
Agreement's arbitration clause. Significantly, there is no doubt

that that dispute also has an "association" or a "connection"
with any dispute between the parties that exists by virtue of the
Mortgage.

Moreover, as noted above, NFPC's characterization of the
Mortgage as inexorably commanding court action is inaccurate.
The Mortgage says only that NFPC, in the event of the Defendants'
default, "may" seek foreclosure in court.  It is beyond
peradventure that the use of the word "may" expresses
permissiveness. *See Bin Lin v. AG of the United States*, 543 F.3d
114, 124 (3d Cir. 2008) (noting that the term "may" in a
regulation is "permissive language"); *Rossman v. Fleet Bank Nat'l
Ass'n*, 280 F.3d 384, 393 (3d Cir. 2002) (noting "[t]he permissive
sense of 'may'").  Such permissive language stands in marked
contrast to the language in the Pledge Agreement, which states
that any dispute between the parties "will" be submitted to
arbitration.  The language in the Pledge Agreement, unlike the
language in the Mortgage, "impose[s] discretionless obligations."
*Lopez v. Davis*, 531 U.S. 230, 241 (2001); *see also Hewitt v.
Helms*, 459 U.S. 460, 471 (1983) (describing "shall," "will," and
"must" as "language of an unmistakably mandatory character").

Finally, while it is well-established law that a party
cannot be compelled to arbitrate absent his agreement to
arbitrate, *see Painewebber, Inc. v. Hartmann*, 921 F.2d 507, 511
(3d Cir. 1990) (citation omitted), NFPC has in fact agreed via

the Pledge Agreement to arbitrate its dispute with the

Defendants. NFPC's position that the Mortgage somehow vitiates

that agreement improperly discounts the "strong federal policy in

favor of the resolution of disputes through arbitration" that the

FAA embodies and to which the parties subscribed by way of the

Pledge Agreement. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*,

560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony*

*Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). As a

consequence, the Court is unpersuaded by NFPC's position that the

Mortgage's reference to a judicial proceeding means that the

parties' dispute must be addressed in court.

NFPC also asserts that even if the parties' dispute

ordinarily should be submitted to arbitration, the Defendants

have waived their right to arbitrate.

Waiver of the right to arbitrate "is not to be lightly

inferred." *Gavlik Const. Co. v. H.F. Campbell Co.*, 526 F.2d 777,

783 (3d Cir. 1975) (quoting *Carcich v. Rederi A/B Nordie*, 389

F.2d 692, 696 (2d Cir. 1968)). "[T]he touchstone for determining

whether the right to arbitrate has been waived" is prejudice.

*Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 925 (3d Cir.

1992). A nonexclusive list of factors is used to determine

whether the requisite level of prejudice exists: (1) "the

timeliness or lack thereof of a motion to arbitrate"; (2) "the

degree to which the party seeking to compel arbitration or to

stay court proceedings pending arbitration has contested the

merits of its opponent's claims"; (3) "whether that party has

informed its adversary of the intention to seek arbitration even

if it has not yet filed a motion to stay the district court

proceedings"; (4) "the extent of its non-merits motion practice";

(5) "its assent to the trial court's pretrial orders"; and (6)

"the extent to which both parties have engaged in discovery."

*Ehleiter v. Grapetree Shores, Inc*., 482 F.3d 207, 222 (3d Cir.

2007) (alteration, quotation marks and citation omitted).

"[W]aiver will normally be found only "where the demand for

arbitration came long after the suit commenced and when both

parties had engaged in extensive discovery." *Painewebber Inc. v.*

*Faragalli*, 61 F.3d 1063, 1068-69 (3d Cir. 1995) (quoting *Gavlik*,

526 F.2d at 783).

     To prevail on its waiver argument, NFPC points to Cunning's

failure to raise the issue of arbitration in his answer to the

complaint.[5]  NFPC is correct that Cunning's answer makes no

mention of arbitration.  NFPC ignores, however, that Wrenn's

answer clearly states that this matter "is barred because of a

mandatory arbitration clause" and that "all claims or disputes

under the [parties'] agreement are to be submitted to arbitration

in New York." (Def. Wrenn's Answer ¶¶ 2, 5-6.)  In her answer,

---

     [5]  Unless otherwise indicated, all references to the
complaint mean the first amended complaint.

Wrenn further asserts as an affirmative defense that "[t]he agreement under which [NFPC] asserts claims has a mandatory arbitration clause which deprives this Court of jurisdiction." (*Id.* at 5.) Although Cunning and Wrenn filed separate answers, they since have filed most pleadings together, including their opposition to NFPC's summary judgment motion. In that opposition, the Defendants assert that this matter must be arbitrated. Wrenn's answer certainly put NFPC on notice that arbitration was on the mind of at least one of the Defendants.

In the Court's view, the several other factors enumerated above also counsel against a waiver finding.

First, NFPC's complaint was filed on April 30, 2008. On June 13, 2008, NFPC requested permission to serve Wrenn by publication.[6] That request was granted on June 27, 2008. The record does not reflect that service by publication ever occurred. On September 3, 2008, NFPC requested the entry of default against Wrenn. After that request was filed, Wrenn evidently became aware of this matter and filed a notice of appearance on September 15, 2008. After being granted an extension of time, Wrenn filed her answer on September 29, 2008. She asserted her right to arbitrate in that answer. The Court does not find that the lapse of a mere two weeks between Wrenn's

---

[6] The record reflects that personal service was effected on Cunning on April 4, 2008 at a hotel located on St. Thomas, U.S. Virgin Islands.

appearance in this matter and her assertion of her right to
arbitrate constitutes enough of a delay for waiver purposes. *See*,
*e.g.*, *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 599 (3d
Cir. 2004) (finding no waiver where a motion to compel
arbitration came thirty-eight days after the defendant learned of
the lawsuit); *Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674,
680 (3d Cir. 2000) (finding no waiver where a party "delayed
seeking arbitration only by one-and-a-half months"); *Painewebber*,
61 F.3d at 1069 (finding no waiver despite a two-month delay);
*see also*, *e.g.*, *Thyssen, Inc. v. Calypso Shipping Corp.*, 310 F.3d
102 (2d Cir. 2002) (concluding that there was no waiver although
the defendant sought arbitration more than eighteen months after
the suit was filed and after plaintiff filed a motion for partial
summary judgment), *cited with approval in Palcko*, 372 F.3d at
598.

Second, discovery in this matter has been minimal.  The
record shows that the parties have done little more than hold a
conference pursuant to Federal Rule of Civil Procedure 26(f).
They also have met with the magistrate judge on at least three
occasions.  The magistrate judge's orders following those
meetings indicate only that the parties were contemplating
mediation.  No discovery or motion practice cutoffs have been
established.  No trial date has been scheduled.  There is no hint
in the record that the parties have conducted depositions,

propounded interrogatories, requested documents or engaged in
other fact discovery.  There is likewise no evidence that NFPC
has incurred substantial expenses in maintaining this lawsuit.
These circumstances also militate against a waiver finding. *Cf.*
*Ehleiter*, 482 F.3d at 223 (finding waiver where "the parties
engaged in extensive discovery, with both sides exchanging
several sets of interrogatories, requests for production of
documents, and expert witness reports, as well as participating
in the depositions of numerous witnesses"); *Hoxworth*, 980 F.2d at
926 (finding waiver where the "plaintiffs devoted substantial
amounts of time, effort, and money in prosecuting the action,
while defendants were able to use the Federal Rules to conduct
discovery not available in the arbitration forum").

Third, the Defendants' non-merits motion practice has been
minimal.  The only motions Wrenn has filed is an opposition to
NFPC's request for entry of default and a request for an
extension of time to file her answer.  The opposition and the
request for an extension of time were filed when this lawsuit was
still nascent.  All other non-merits motion practice originates
not with the Defendants, but with NFPC itself.  These
circumstances likewise disfavor a waiver finding. *See*, *e.g.*,
*Wood*, 207 F.3d at 680 (finding no waiver where "the defendant's
"litigation tactics had not been extensive: it had not taken any
depositions[,] served any discovery demands[,] [or] been able to

use the Federal Rules to conduct discovery not available in the arbitration forum" (quotation marks and citation omitted)); *cf. Ehleiter*, 482 F.3d at 223 (finding waiver where the defendant "engaged in substantial non-merits motion practice . . ., including filing a motion to implead a third party defendant").

Finally, although both of the Defendants have filed answers, it is well settled that "merely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not necessarily constitute a waiver." *Gavlik*, 526 F.2d at 783 (alteration, quotation marks and citation omitted). Indeed, contesting the merits of a claim "is not enough to overcome the presumption of arbitrability." *Wood*, 207 F.3d at 680 (citing *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

On balance, the Court does not find that the Defendants have waived their right to arbitrate. None of the factors discussed above, standing either alone or together, show sufficient, if any, procedural or substantive prejudice to NFPC. NFPC's waiver argument therefore fails.

## IV. <u>CONCLUSION</u>

Where, as here, the parties to a dispute have agreed to arbitrate and their dispute falls within the scope of their agreement, a court is not at liberty to address that dispute in the face of a motion to compel arbitration. *See At&T Techs. v.*

*Communications Workers of Am.*, 475 U.S. 643, 649 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."); *IBEW, Local 21 v. Ill. Bell Tel. Co.*, 491 F.3d 685, 688 (7th Cir. 2007) ("When determining whether the parties have agreed to arbitration, a court must be careful not to consider the merits of the underlying claim." (citation omitted)), *cert. denied*, 128 S. Ct. 1696 (2008). Accordingly, the Court will stay this matter and order the parties to arbitration.  An appropriate order follows.

S_____
        **CURTIS V. GÓMEZ**
           **Chief Judge**