IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| NATIONAL FINANCIAL PARTNERS CORP., Plaintiff, | ) | |
| vs. | ) | Civil No. 2008-37 |
| DENNIS A. CUNNING and RHONDA J. WRENN a/k/a RHONDA J. WRENN CUNNING, Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Non-party applicant NPA Associates, LLC ("NPA") seeks to intervene [DE 73] in an action for debt and foreclosure pursuant to Rule 24(a) of the Federal Rules of Civil Procedure. Plaintiff National Financial Partners Corp. ("NFP") opposes the motion. [DE 76].

## I. BACKGROUND

Plaintiff initiated this diversity action by complaint [DE 1] on March 14, 2008, which was amended on April 30, 2008. [DE 7]. Plaintiff seeks damages against Dennis A. Cunning ("Cunning")[1] and Rhonda J. Wrenn a/k/a Rhonda J. Wrenn Cunning ("Wrenn") (collectively, "defendants") arising from defendants' breach of a promissory note secured by a pledge agreement. Plaintiff also seeks foreclosure of a lien it asserts against defendants' real property described below.

### A. NFP Loan

Cunning and Wrenn are the titleholders of record by warranty deed to real property described as Parcel No. 1C Estate Thomas, No. 6C New Quarter, St. Thomas, U.S. Virgin

---

[1] Cunning is now deceased. *See* [DE 72].

Islands, consisting of 0.45 U.S. acres, more or less, as shown on PWD Map No. D9-2537-T83 (the "Property"). Am. Compl., Ex A [DE 7-1]. On or about December 30, 2005, Cunning executed a Secured Personal Recourse Promissory Note (the "Note") in favor of NFP in the amount of $1,761,686.00.[2] The Note required repayment of principal and interest at the rate of six percent over an eighteen-month term, beginning on January 1, 2006. Am. Compl., Ex. B [DE 7-2]. To secure repayment of the Note, both Cunning and Wrenn executed a Pledge Agreement. The Pledge Agreement, which was not recorded, purports to grant NFP a security interest in the Property as well as other collateral not a subject of this lawsuit. Am. Compl., Ex. C [DE 7-3].

After NFP made demand on Cunning for repayment of the Note and Cunning failed to pay, NFP instituted this action on April 30, 2008, declaring the entire unpaid balance of the Note, including late fees and interest, due and payable. Am. Compl. ¶ 16. Cunning and Wrenn filed separate answers [DE 10, 22] on June 10, 2008 and September 29, 2008, respectively, generally denying the allegations of the amended complaint and raising several affirmative defenses. On March 20, 2009, NFP filed a motion for summary judgment [DE 34], to which defendants filed a joint response [DE 40]. On July 7, 2009, the District Court stayed this matter pending arbitration and denied all pending motions as moot. [DE 68]. On September 8, 2011, the arbitrator signed a final partial award in the arbitration, dismissing it as to Wrenn. [DE 71-2]. However, the arbitrator's final order as to Cunning was held in abeyance as a result of Cunning's filing for bankruptcy under Chapter 7 of the Bankruptcy Code. On December 13, 2011, the Bankruptcy Court lifted the automatic stay imposed by 11 U.S.C. § 362 to allow the arbitration to conclude. [DE 71-2]. On January 23, 2012, the arbitrator entered a final award in favor of NFP and against Cunning, which provides in part that NFP "is awarded the sum of $1,619,609 together

---

2 Wrenn is not a signatory to the Note. *See* Am. Compl., Ex. B [DE 7-2].

with interest at the rate of 11% per annum from June 30, 2007 until paid together with attorneys' fees of $125,000." [DE 71-2]. On April 2, 2012, NFP filed a motion [DE 70] to confirm the January 23, 2012 arbitration award, which the District Court granted [DE 80] on November 15, 2012.[3]

**B. NPA's Interest**

On January 6, 2006, Cunning executed an "Adjustable Rate Note with Interest-only Period" evidencing a loan in the amount of $1,000,000.00 from Flagstar Bank, FSB ("Flagstar note"), NPA's Proposed Cross-cl., Ex. A [DE 73-1], which was secured by a mortgage on the Property ("Flagstar mortgage") signed by defendants and recorded in the St. Thomas Office of the Recorder of Deeds on January 12, 2006. *Id.*, Ex. B [DE 73-1].

On March 2, 2011, Flagstar filed a complaint ("Flagstar complaint") requesting, *inter alia*, the enforcement and foreclosure of the Flagstar mortgage. *See Flagstar v. Cunning*, Case No. 3:11-CV-28 (D.V.I. 2011) [DE 1]. On May 25, 2011, Flagstar assigned its interest in the mortgage to NPA. NPA's Proposed Cross-cl., Ex. C [DE 73-1]. On July 3, 2011, Flagstar voluntarily dismissed the Flagstar complaint. *See Flagstar*, Case No. 3:11-CV-28 [DE 13]. On November 15, 2011, NPA filed a new complaint against defendants and junior lienholders, including NFP. *See NPA Assoc., LLC v. Cunning*, Case No. 3:11-CV-124 (D.V.I. 2011) [DE 1]. NPA subsequently voluntarily dismissed its complaint on March 26, 2012, and elected to intervene in the present matter. NPA's Mem. Supp. Mot. Intervene ("NPA's Mem.") at 3 [DE 74].

---

[3] *See* 9 U.S.C. § 9 ("If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.").

In its proposed cross-claim, NPA alleges defendants have failed to comply with the terms of the Flagstar note and/or Flagstar mortgage, and seek to exercise all remedies provided therein, including foreclosure of NPA's mortgage lien on the Property. NPA's Proposed Cross-cl. at 5-6. NPA alleges further the existence of the following recorded junior liens against the Property, over which NPA's mortgage lien has priority: (1) lien in favor NFP recorded January 20, 2006;[4] (2) lien in favor of Simon Singer recorded April 15, 2009; (3) Internal Revenue Service federal tax lien recorded September 28, 2010; and (4) Virgin Islands Bureau of Internal Revenue tax lien recorded April 6, 2011. *See* NPA's Proposed Cross-cl. at 4 [DE 73-1]; *see also* NPA's Reply, Exs. 2-3 [DE 78-2, 78-3].

## II. APPLICABLE LAW

NPA moves to intervene as a matter of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure.[5] Rule 24(a) provides a court must permit intervention where a movant, upon timely motion,

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a)(2). Thus, the following elements must be met in order to establish

---

[4] NPA attached to its memorandum in support of its motion to intervene a copy of a mortgage covering the Property that defendants had executed in favor of NFP ("the NFP mortgage"). NPA's Mem., Ex. A [DE 74-1]. The NFP mortgage, which secures the repayment of the Note, was signed on December 30, 2005, but not recorded until January 20, 2006. *Id*. NPA also attached to its memorandum a copy of a Notice of Lis Pendens regarding the instant matter, which was not recorded by NFP until February 17, 2011 – almost three years after initiating the instant matter. *Id*., Ex. B [DE 74-2]. Curiously, neither NFP's first amended complaint nor its opposition to NPA's motion acknowledge the NFP mortgage. Rather, NFP relies solely on the unrecorded Pledge Agreement in asserting its right of foreclosure over the Property.

[5] NPA does not move in the alternative for permissive intervention pursuant to Rule 24(b) even though the facts suggest the requirements of Rule 24(b) may be met. Accordingly, the Court limits its analysis to Rule 24(a). *See Sur. Adm'rs, Inc. v. Samara*, 2006 U.S. Dist. LEXIS 40889, at *10 n.4 (E.D. Pa. June 20, 2006) (noting "Rule 24(c) requires the applicant to identify the type of intervention sought – intervention as of right or permissive intervention" and limiting its analysis to consideration under Rule 24(a) where the language in the motion, which failed to expressly identify the type of intervention, suggested intervention as a matter of right only).

intervention as of right: (1) "the application for intervention is timely;" (2) "the applicant has a sufficient interest in the litigation;" (3) without intervention, "the interest may be affected or impaired, as a practical matter by the disposition of the action;" and (4) "the interest is not adequately represented by an existing party in the litigation." *General Star Indem. Co. v. V.I. Port Auth.*, 224 F.R.D. 372, 374-75 (D.V.I. 2004) (quoting *Brody v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992)); *accord Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987) (stating each factor "must be met to intervene as of right").

A motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." FED. R. CIV. P. 24(c). The court must accept as true the non-conclusory allegations made in support of a motion to intervene. *See Olympic Sports Data Servs. v. Maselli*, 2008 U.S. Dist. LEXIS 103546, at *5 (E.D. Pa. Dec. 22, 2008) (stating "[t]he court is to accept the movant's motion[] and pleadings as true to the extent they are non-conclusory and well-pleaded") (collecting cases). The party seeking to intervene bears the burden of demonstrating that intervention is appropriate. *See* 6 James W. Moore et al., 6-24 Moore's Federal Practice, § 24.03 (3d ed.) (stating the applicant bears the burden of establishing its right to intervene and failure to establish any one of the criteria under Rule 24(a) is sufficient grounds to deny the motion); *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 n.9 (3d Cir. 1994) (burden of proving all four elements under Rule 24(a) "falls on the applicant").

## III. DISCUSSION

### A. Timeliness of Intervention Application

Rule 24 is silent as to what constitutes a timely application; accordingly, "the question must be answered in each case by the exercise of the sound discretion of the trial court."

*Lumbermens Mut. Cas. Co. v. Rhodes*, 403 F.2d 2, 5 (10th Cir. 1968). "Timeliness is to be determined from all the circumstances," and "the point to which the suit has progressed . . . is not solely dispositive." *NAACP v. New York*, 413 U.S. 345, 365-66 (1973); *see also Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (explaining "[t]he analysis is contextual; absolute measures of timeliness should be ignored"). Accordingly, determining the timeliness of a motion to intervene entails consideration of the following factors: (1) the speed with which the applicant acted when it knew or should have known its rights are directly affected by the litigation and the reason for any delay in so acting; (2) "the stage of the proceedings reached when the movant seeks to intervene," and (3) "the prejudice the resulting delay might cause to other parties." *Gov't of the V.I. v. Lansdale*, 2010 U.S. Dist. LEXIS 75804, at *7 (D.V.I. July 26, 2010) (citing *Alcan Aluminum, Inc.*, 25 F.3d at 1182 and *Choike v. Slippery Rock Univ.*, 297 Fed. Appx. 138, 140 (3d Cir. 2008)); *see Sierra Club*, 18 F.3d at 1206 (to determine whether an applicant acted promptly, courts consider "the speed with which the would-be intervenor acted when it became aware that its interests would no longer be protected by the original parties").

NFP argues NPA's motion is untimely as it will cause prejudice to the parties in light of the advanced stage of the proceedings. In particular, NFP notes the motion to intervene was filed (1) over four years after the lawsuit was initiated, (2) over three years after the close of all discovery on February 1, 2009, (3) over three years after the filing of the dispositive motion on February 20, 2009, (4) over three years after the parties were referred to arbitration on July 7, 2009, (5) nearly seven months after the arbitrator entered a final award in NFP's favor on January 23, 2012, and (6) over four months after NFP filed its motion to confirm the arbitration award.[6]

---

[6] As stated earlier, the District Court confirmed the arbitration award on November 15, 2012. [DE 80].

1. NPA's knowledge of risk to its rights

NPA states it "first learned of the risk to its rights" on or about May 5, 2011 – the date of the assignment of the Flagstar mortgage to NPA. At that time, the Flagstar litigation, in which NFP was a named defendant, was underway, and NPA "believed its interests were adequately protected" by Flagstar. NPA's Mem. at 6 [DE 74]. On or about June 14, 2011, NPA first learned of the potential ramifications of the instant matter on its interest when a title search of the Property revealed NFP's lis pendens. NPA's Mem. at 7; *id*., Ex. 2 [74-2].[7] However, NPA was "diligently negotiat[ing] a settlement with" Cunning during the summer of 2011 and in furtherance of that goal, "NPA voluntarily dismissed the Flagstar complaint."[8] NPA's Reply at 2 [DE 78]. Settlement negotiations eventually "broke down" due to "extenuating circumstances" – Cunning's illness (he died "on or around November 11, 2011") and his filing for Chapter 7 bankruptcy. NPA's Mem. at 6; NPA's Reply at 2. Accordingly, NPA filed its own lawsuit in November 2011 "to protect its interests in the property." NPA's Mem. at 6. Soon thereafter, however, NPA learned of Cunning's death and

> [d]ue to the uncertain nature of [] Cunning's estate and probate, as well as ongoing negotiations between NPA and NFP regarding a potential settlement, NPA elected to voluntarily dismiss its action [on March 26, 2012]. In an effort to conserve judicial resources and consolidate the proceeding, NPA elected to intervene in the present matter [approximately four months later] when it became clear that it would not be able to reach an out-of-court agreement with either NFP or Mr. Cunning.[9]

NPA's Reply at 2-3 [DE 78].

---

[7] NPA also states that "the true risk to NPA's rights from the NFP action did not fully arise [] until the arbitrator signed her final award on January 23, 2012." NPA's Mem. at 7 [DE 74]. NPA nevertheless still dismissed its own action two months later, and did not move to intervene in the NFP action until five months after that.

[8] As noted previously, Flagstar assigned it interest in the mortgage to NPA on May 25, 2011.

[9] The Court assumes in referencing Cunning, NPA meant Cunning's estate.

NPA's rationale for the delay between the date NPA knew its rights were directly affected by the litigation (June 14, 2011) and the filing of its motion (August 1, 2012) is unavailing. While settlement efforts are certainly to be encouraged, a party cannot wait to act to protect its rights in the interim in the event – as occurred here – the settlement efforts fail. Even if, as NPA argues, the "true risk" to its rights arose on the entry of the arbitrator's award in January 2012, it was not reasonable for NPA to wait nearly eight more months to seek to join in this dispute. Accordingly, the Court finds NPA did not act timely relative to when it learned of the risk to its rights.

2. Stage of the proceedings and prejudice to the parties

The inquiry does not end there, however, as the Court must also consider the stage of the proceedings and whether intervention would prejudice the existing parties. As noted, an arbitration award had been entered in this matter in January 2012, and at the time intervention was sought, NFP had moved for this Court to confirm the award. NPA emphasizes the fact that all proceedings were stayed pending arbitration as of July 7, 2009, and contends further that any prejudice to NFP is "largely self-imposed," relying on NFP's knowledge of the Flagstar mortgage from the date NFP filed its original complaint. NPA's Reply at 3.[10, 11]

---

10 In NFP's original complaint, it erroneously alleged that the Note was secured by a mortgage in favor of NFP recorded on January 12, 2006, a copy of which is attached as Exhibit C to the original complaint. Compl. ¶ 13 [DE 1]; Id., Ex. C [DE 1-4]. Exhibit C, however, is a copy of the Flagstar mortgage, which was later assigned to NPA. The NFP mortgage, the existence of which NFP neither acknowledges nor disputes, was not recorded until January 20, 2006. *See* NPA's Mem., Ex. A [DE 74-1] (NFP mortgage); NPA's Proposed Cross-cl., Ex. B [DE 73-1] (NPA mortgage); *see* NFP's Reply at 6 (conceding NPA has a first priority mortgage on the subject property).

11 In support of its position that any prejudice to NFP is "self-imposed," NPA also relies on NFP's "failure to name junior lien holders [Simon Singer and the IRS] as necessary parties" given both had obtained liens against the property prior to the recordation of NFP's notice of lis pendens. NPA's Reply at 4. The Virgin Islands Code requires "[a]ny person having a lien subsequent to the plaintiff upon the same property . . ., secured by the mortgage or other lien which is the subject of the action, shall be made a defendant in the action." 28 V.I.C. § 532; *see Chase Manhattan Bank N.A. v. Stapleton*, 2008 U.S. Dist. LEXIS 58860, at *8 (D.V.I. July 31, 2008) (stating "[s]ection 532 clearly requires that subsequent lienholders be joined as mandatory parties to pending foreclosure actions").

The confirmation of the arbitration award, while not a final judgment, is final for purposes of appeal. *See Hewlett-Packard Co. v. Berg*, 61 F.3d 101, 104 (1st Cir. 1995) (explaining a confirmation order is final for purposes of appeal, even absent the entry of a final judgment satisfying the usual prerequisites of 28 U.S.C. § 1291 and Fed. R. Civ. P. 58, because "Congress directed in the statute governing arbitration-related appeals that such an 'order' confirming an award should be immediately appealable"); *see Bates v. 84 Lumber Co., L.P.*, 205 Fed. Appx. 317, 325 (6th Cir. 2006) (explaining "[a]t the end of arbitration proceedings, further action will occur in district court resulting either in confirmation of the arbitration award or a refusal to enforce it [–] [o]nly at that point will a final judgment be entered"). Accordingly, the Court finds instructive *McDonald v. E. J. Lavino Co*., 430 F.2d 1065 (5th Cir. 1970), wherein the Fifth Circuit explained,

> An attempt to intervene after final judgment is ordinarily looked upon with a jaundiced eye. The rationale which seems to underlie this general principle [ ] is the assumption that allowing intervention after judgment will either (1) prejudice the rights of the existing parties to the litigation or (2) substantially interfere with the orderly processes of the court.

*Id.* at 1072.

Here, the evidence reveals that NFP knew or should have known from the beginning of the litigation that Flagstar (and NPA by assignment) not only had an interest in the Property, but an interest superior to NFP's. As such, NFP's prejudice argument rings hollow. Furthermore, it is not evident to the Court how allowing NPA to intervene will "substantially interfere with the orderly processes of the [C]ourt." Intervention would not require relitigating the issue of

---

Nevertheless, this argument was not raised in NPA's motion and it is not evident to the Court how NFP's failure to name junior lienholders impacts the timeliness analysis, and in particular, the prejudice factor, with respect to determining whether NPA should be allowed to intervene. Accordingly, the Court focuses solely on the issue raised in NPA's motion and reiterated in its reply – NFP's alleged knowledge of the Flagstar mortgage.

defendants' liability to NFP and thus has no impact on the confirmation of the arbitration award.

While NPA has not provided a satisfactory reason for its delay, the lack of undue prejudice to NFP despite the late stage of the proceeding weighs in favor of the timeliness factor.

**B. Interest in the Litigation**

The Court must next address the Rule 24(a) factors that relate to the claimed interest of the applicant. To establish a sufficient interest for intervention, the applicant must demonstrate "a legally cognizable interest, i.e., one that belongs to or is owned by the intervenor." *Lansdale*, 2010 U.S. Dist. LEXIS 75804, at *10 (citing *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995)); *see Subramaniam v. Centeno*, 2010 U.S. Dist. LEXIS 54642, at *5 (D.V.I. June 3, 2010) (noting "a significantly protectable interest is defined as a legal interest as distinguished from interests of a general and indefinite character") (citation omitted). "A mere economic interest in the outcome of the suit is insufficient to support a motion to intervene." *Lansdale*, 2010 U.S. Dist. LEXIS 75804, at *10.

Here, NPA contends that it holds a direct, substantial and legally protectable interest as first mortgagee on the Property. NFP contends NPA (1) has a "mere economic interest" only and (2) lacks sufficient interest in the litigation which concerns an agreement between NFP and defendants – "an agreement to which NPA is not a party." The arbitration award indicates that the monies owed NFP are subject to a mortgage secured by the Property – the same Property securing the monies owed NPA and on which NPA has a priority lien. Accordingly, the Court finds NPA has demonstrated that it has a legally cognizable interest because of its alleged first mortgagee status on the Property. *See In re Parr*, 17 B.R. 801, 804 (Bankr. D.N.Y. 1982) (stating "a colorable claim of ownership is certainly a sufficient interest to justify Rule 24(a) relief"); *see also Idewu v. Sealey*, 2012 U.S. Dist. LEXIS 36783, at *3 (D.V.I. Mar. 19, 2012)

(requiring *sua sponte* that a first-priority mortgagee be given the opportunity to intervene in a foreclosure action by a second priority mortgagee pursuant to 28 V.I.C. § 532[12]).

**C. Potential Impairment of Interest by Disposition of Action in Applicant's Absence**

Once an applicant for intervention has established that it has a sufficient legal interest in the underlying dispute, the applicant must also show the interest is in jeopardy in the lawsuit. In making such a determination, the court must assess "the practical consequences of the litigation," and "may consider any significant legal effect on the applicant's interest." *Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992) (citations and internal quotations omitted). It is not sufficient that the claim is incidentally affected; rather, there must be "a tangible threat" to the applicant's legal interest. *Id*. This factor may be satisfied if, for example, a disposition of the present action in the applicant's absence will have a stare decisis, res judicata or collateral estoppel effect on any action which it may bring separately, or if the applicant's rights may be affected by a proposed remedy. *See United States v. Smith*, 48 V.I. 544, 550 (D.V.I. 2006).

Here, NPA states in conclusory fashion that its interest – the Property – will be affected by the disposition of the action. NPA does not explain this statement. Rather, it merely notes that as of February 14, 2011, defendants owed NPA the principal sum of $998,520.01 and attempts to "reach an out-of-court agreement" with Cunning "broke down." NPA's Mem. at 8. NPA has not shown that there is a tangible threat to its legally cognizable interest as first mortgagee in the present litigation. *Cf. Kyungsun Yu v. 2100 N. Cent., LLC*, 2009 U.S. Dist. LEXIS 97840, at *12 (D.N.J. Oct. 20, 2009) (finding applicant showed a tangible threat to its legally cognizable interest "as first mortgagee . . . by virtue of its alleged inability to sell its loan

---

[12] In a foreclosure action by a junior lienholder, "[a]ny person having a prior lien may be made defendant at the option of the plaintiff, or by the order of the court when deemed necessary." 28 V.I.C. § 532.

to a third party"). While an arbitration award has been confirmed in NFP's favor, the award has no impact on NPA's priority status as a lienholder. Disposition in a foreclosure action by NFP will not impair NPA's interest in the Property as NFP's title will be subject to NPA's lien. As NPA has not sufficiently shown that this case will have a significant legal effect on NPA's interest as first mortgagee, the Court need not reach NPA's argument under the fourth prong of Rule 24(a)(2). *See Mountain Top*, 72 F.3d at 366 (stating "[e]ach [Rule 24(a)(2)] requirement[] must be met to intervene as of right"). Nevertheless, the Court discusses the fourth prong for the sake of completeness.

**D. Adequacy of Representation of Applicants' Interest by Existing Parties**

Finally, NPA must demonstrate that the representation of its interests in the existing litigation may be inadequate. *See Kleissler v. United States Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998). This burden is satisfied by a showing that: (1) "the interest of the applicant so diverges from those of the representative party that the representative party cannot devote proper attention to the applicant's interest; (2) there is collusion between the existing parties; or (3) the representative party is not diligently prosecuting its suit." *Alcan Aluminum, Inc.*, 25 F.3d at 1185 n.15.

NPA argues that that its interests are not protected given (1) it is not represented in the present action, and (2) "NFP has failed to name NPA and/or Flagstar at nearly every step of the litigation." NPA's Mem. at 9. In response, NFP reiterates its position that NPA has no legally cognizable interest in this action. NFP also correctly notes that "28 V.I.C. § 532 does not require that NFP name a senior lienholder, such as NPA, as a defendant in this matter." NFP's Resp. at 7. Nevertheless, the Court finds NPA has satisfied its "comparatively light" burden of showing the possibility of inadequate representation. *Kleissler*, 157 F.3d at 972. NFP's protection of its

junior lienholder status does not align with that of NPA's concern as first mortgagee. *See Am. Farm Bureau Fed'n v. United States EPA*, 278 F.R.D. 98, 110 (M.D. Pa. 2011) (stating "[t]he possibility that the interests of the applicant and the parties may diverge need not be great in order to satisfy the minimal burden").

## IV. CONCLUSION

Although the motion to intervene does not present significant prejudice to NFP despite the delay of its filing, NPA has not demonstrated that any of its right in the Property as the senior lienholder may be impaired if it is not permitted to intervene. For the foregoing reasons, it is HEREBY ORDERED that NPA's motion to intervene as of right [DE 73] is DENIED.

**Dated:** December 26, 2012

S_____________________________
**RUTH MILLER**
United States Magistrate Judge